

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE (K.B.), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:22-CV-00226 |
| | § | |
| BACKPAGE.COM, LLC and FACEBOOK, | § | |
| INC. n/k/a META PLATFORMS, INC., | § | |
| | § | |
| Defendants. | | |

**MOTION OF DEFENDANT FACEBOOK, INC., N/K/A META PLATFORMS, INC.,
TO DISMISS PURSUANT TO RULES 12(b)(2) AND 12(b)(6)**

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

STATEMENT OF RELEVANT FACTS ........................................................................ 1

LEGAL STANDARD ..................................................................................................... 2

ARGUMENT ................................................................................................................... 3

    I.    This Court Lacks Personal Jurisdiction Over Meta ......................................... 3

        A.    Meta Is Not Subject to General Jurisdiction Because It Is Not "at Home" in Texas ................................................................................................... 4

        B.    Meta Is Not Subject to Specific Jurisdiction in Texas ............................. 6

    II.    Plaintiff Fails to State Any Plausible Claims Against Meta ............................ 7

        A.    Plaintiff Cannot State a Claim Under Chapter 98 of Texas's Civil Practice and Remedies Code .................................................................... 7

        B.    Plaintiff Also Has Not Stated a Nuisance Claim Against Meta ............... 8

    CONCLUSION .......................................................................................................... 14

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 [129 S. Ct. 1937] (2009) ...................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 [127 S. Ct. 1955] (2007) ...................................................................3

*BMC Software Belgium, N.V. v. Marchand*,
  83 S.W.3d 789 (Tex. 2002) .......................................................................................3

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017) ...............................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
  137 S. Ct. 1773 (2017) ...............................................................................................6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 [105 S. Ct. 2174] (1985) ...................................................................6

*Carmona v. Leo Ship Mgt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) .................................................................................3, 6

*Daimler AG v. Bauman*,
  571 U.S. 117 [134 S. Ct. 746] (2014) ...............................................................3, 4, 5

*Desirous Parties Unlimited, Inc. v. Right Connection, Inc.*,
  No. CV H-21-0470, 2021 WL 2779313 (S.D. Tex. July 2, 2021) ..........................5

*Doe v. MySpace, Inc.*,
  528 F.3d (5th Cir. 2008) ...........................................................................................7

*Engel v. Hilton Worldwide*,
  No. CV H-20-2249, 2020 WL 5441568 (S.D. Tex. Sept. 10, 2020) ......................5

*In re Facebook*,
  625 S.W.3d 80 (Tex. 2021) ...............................................................................7, 8, 10

*Fed. Agency of News LLC v. Facebook, Inc.*,
  395 F. Supp. 3d 1295 (N.D. Cal. 2019) .................................................................10

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
  141 S. Ct. 1017 (2021) ...............................................................................................4

*Kim v. State*,
  451 S.W.3d 557 (Tex. App. 2014) ...........................................................................13

## TABLE OF AUTHORITIES
### (CONTINUED)

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .................................................................10

*La'Tiejira v. Facebook, Inc.*,
   272 F. Supp. 3d 981 (S.D. Tex. 2017) ......................................................10

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) .....................................................................4

*Meritor Auto., Inc. v. Ruan Leasing Co.*,
   44 S.W.3d 86 (Tex. 2001) .........................................................................11

*Moki Mac River Expeditions v. Drugg*,
   221 S.W.3d 569 (Tex. 2007).......................................................................3

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
   882 F.3d 96 (5th Cir. 2018) .......................................................................2

*Sunstate Equip. Co., LLC v. Hegar*,
   601 S.W.3d 685 (Tex. 2020).....................................................................11

*Tenaska Frontier Partners, Ltd. v. Sullivan*,
   273 S.W.3d 734 (Tex. App. 2008).............................................................11

*United States v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) ...............................................................7

*Valdez v. Allstate Tex. Lloyd's*,
   No. EP-16-CV-346-PRM, 2016 WL 9414143 (W.D. Tex. Nov. 7, 2016)............11

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) .....................................................................3

**STATUTES**

47 U.S.C. § 230.................................................................................................10

Tex. Civ. Prac. & Rem. Code § 125.002 ...............................................12, 13

Tex. Civ. Prac. & Rem. Code § 125.0015 ..........................8, 9, 10, 11, 13

Tex. Civ. Prac. & Rem. Code § 125.0025 .............................................10

Tex. Civ. Prac. & Rem. Code § 125.045 ...............................................12

Tex. Civ. Prac. & Rem. Code § 125.062 .................................................8

Tex. Civ. Prac. & Rem. Code § 125.064 .................................................8

## TABLE OF AUTHORITIES
## (CONTINUED)

**RULES**

Fed. R. Civ. P. 12 .................................................................................................................2, 3, 5

## INTRODUCTION

Plaintiff, a Florida resident, alleges that she was trafficked for sex through advertisements placed on the website backpage.com.  Although the factual assertions in Plaintiff's Petition are tragic, they do not support a claim against Facebook, Inc., n/k/a Meta Platforms, Inc. ("Meta") under either of the two Texas statutes she invokes—the sex-trafficking statute or nuisance statute.

Factually, Plaintiff makes the conclusory allegation that Meta's online platforms are "marketplaces for human trafficking."  And, although she makes a general reference in one of the charging paragraphs of her Petition to "exploitation through Instagram," she otherwise alleges no connection between her trafficking and Meta.  She does not allege that she had an account on a Meta platform, that she interacted with a trafficker on a Meta platform, that Meta or its platforms had any connection with her trafficker, or that Meta did anything in connection with her trafficking. Nor does she allege any connection between Meta and the backpage.com website or its operator, Defendant Backpage.com, LLC, or the alleged advertisements her trafficker posted on that website.  And Plaintiff does not—nor can she—allege facts demonstrating a nuisance with respect to Meta's platforms, particularly in light of the Texas Legislature's express exemption of interactive computer services from that statute's reach.

The Court should dismiss this action against Meta because (1) the Court lacks personal jurisdiction over Meta because Meta is not "at home" in Texas and Plaintiff's claims do not arise from any of Meta's contacts with this state, and (2) Plaintiff fails to state a claim under either Texas's sex-trafficking statute or the common nuisance statute.

## STATEMENT OF RELEVANT FACTS

Plaintiff alleges that she is a resident of Florida and that she was the victim of trafficking in Houston, Texas between June 2017 and July 2018.  Pet. ¶¶ 10, 85.  The Petition alleges that her trafficking was enabled by the website backpage.com, operated by defendant Backpage.com, LLC

1

("Backpage"), which allowed her trafficker to buy and post on backpage.com advertisements offering Plaintiff for sex.  *Id.* ¶¶ 86-87.  Plaintiff alleges that Backpage "invested in, financed, controlled, supervised, and managed a prostitution enterprise" involving her trafficking and thereby agreed "to participate in the proceeds of prostitution."  *Id.* ¶¶ 103-104.

Plaintiff does not affirmatively allege any causal link between Meta and her alleged injuries, her alleged trafficking, her interactions with her trafficker, or her trafficker's Backpage advertisements.  The Petition contains no actual facts suggesting that Meta played any affirmative role in Plaintiff's trafficking, offering only an unelaborated and conclusory allegation that Meta assisted and facilitated Plaintiff's trafficking. Pet. ¶ 70.  It also asserts generalized allegations that a sex trafficking "marketplace" exists on Meta's Facebook.com platform, *id.* ¶¶ 1-6, that Meta has committed certain omissions related to the production and display of public service announcements, *id.* ¶ 94, that certain omissions have led to increased profits for Meta, *id.*, and that Meta maintains a nuisance, *id.* ¶ 99.  Meta disputes these allegations.  The Petition also alleges that Plaintiff's mother reported Plaintiff's "exploitation through Instagram" to Meta. *Id.* ¶ 95.  This last allegation appears in one of the charging paragraphs of the Petition, and there are no predicate facts anywhere else in the Petition—including any allegations about what "exploitation" this refers to, how or when it occurred, or whether it had anything to do with the acts of Plaintiff's trafficker or the postings on backpage.com.  Despite alleging no affirmative link between the allegations concerning Meta and her own trafficking (the only specific instance of trafficking alleged in the Petition), Plaintiff nonetheless brings Texas sex-trafficking and statutory nuisance claims against Meta.  *Id.* ¶¶ 91-99.

## LEGAL STANDARD

A court must dismiss an action under Federal Rule of Civil Procedure 12(b)(2) if personal jurisdiction is lacking.  *See Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th

Cir. 2018).  The court "accept[s] the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve[s] all controverted allegations in the plaintiff's favor."  *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper "on the basis of a dispositive issue of law."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (citation omitted).  A complaint must be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 [129 S. Ct. 1937, 1949] (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [127 S. Ct. 1955, 1974] (2007)).  After stripping away "conclusory statements," the Court must decide whether the remaining allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 [127 S. Ct. at 1965].

## ARGUMENT

### I.    This Court Lacks Personal Jurisdiction Over Meta

This case involves an out-of-state plaintiff bringing claims against Meta, an out-of-state defendant, based on the actions of unrelated third parties (Backpage and Plaintiff's trafficker), and without any connection between Meta's Texas contacts, the third parties, or the plaintiff's claims.

Federal courts initially look to state law when assessing personal jurisdiction over defendants.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 [134 S. Ct. 746, 753] (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).  Texas's long-arm statute extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit," *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citation omitted), and the statute's requirements "are satisfied if an assertion of jurisdiction accords with federal due-process limitations," *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).  The Constitution permits, as relevant here, the exercise of personal jurisdiction over a non-resident

only if the non-resident has "purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citation omitted).

When they demonstrate purposeful availment, "minimum contacts" can give rise to either general or specific personal jurisdiction. *Lewis*, 252 F.3d at 358. Personal jurisdiction is lacking here because Plaintiff can establish neither form of jurisdiction. There is no *general* jurisdiction over Meta, a Delaware corporation headquartered and with its principal place of business in California, Pet. ¶ 13, because it is not "at home" in Texas. And there is no *specific* jurisdiction over Meta because Plaintiff's claims do not even implicate Meta—much less arise out of or relate to Meta's contacts with Texas.

## A.   Meta Is Not Subject to General Jurisdiction Because It Is Not "at Home" in Texas

Meta is not subject to general jurisdiction in Texas. General jurisdiction arises only when the defendant's contacts with the forum state are so continuous and systematic that the defendant is "essentially at home" in a state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021); *Daimler*, 571 U.S. at 138-39 [134 S. Ct. at 751]. In most cases, that means that a corporation is subject to general jurisdiction only in its state of incorporation and in the state where it has its principal place of business. *Ford Motor*, 141 S. Ct. at 1024. A corporation is subject to general jurisdiction in an additional forum in only "exceptional" circumstances—such as when a corporation has temporarily relocated its principal place of business. *See Daimler*, 571 U.S. at 139 n.19 [134 S. Ct. at 761 n.19]. The Supreme Court has expressly rejected attempts to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" as "unacceptably grasping." *Id.* at 137-38 [at 760-61] (internal quotation marks and citations omitted).

4

The general jurisdiction inquiry thus requires more than a myopic assessment of a defendant's activities within the state in question.  Rather, the court must appraise the "corporation's activities in their entirety" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (brackets in original) (quoting *Daimler*, 571 U.S. at 139 n.20 [134 S. Ct. at 762 n.20]).

Meta is not "at home" in Texas because it is not incorporated, nor does it have its principal place of business, in this state.  Pet. ¶ 13.  Texas is thus not the "paradigm[atic]" forum in which Meta is at home and subject to general jurisdiction.  *BNSF*, 137 S. Ct. at 1558.

Nor are there "exceptional" circumstances such that Meta would nonetheless be subject to general jurisdiction in Texas.  The fact that Meta does business in Texas, as it does in every other state, does not render it "at home" here.  Meta employs more than 71,000 employees globally and has offices in more than eighty cities.  *See* Declaration of Michael Duffey ("Duffey Decl."), Ex. 1 at 17; *see also* Ex. A, *Engel v. Hilton Worldwide*, No. H-20-2249, 2020 WL 5441568, at *5 (S.D. Tex. Sept. 10, 2020) (Lake, J.) (considering defendant's declaration when assessing Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction). And each month, Meta reaches approximately 3.59 billion people who visit at least one Meta platform.  *See* Duffey Decl., Ex. 1 at 93.  Thus, Plaintiff's allegations about Meta's Texas connections reflect a small fraction of Meta's global business and fail to show that Meta is subject to general jurisdiction in this state.  *See BNSF*, 137 S. Ct. at 1554 (no general jurisdiction over out-of-state company despite company having thousands of miles of railroad track, more than two-thousand workers, substantial revenue generation, and a facility in-state because that presence represented only small percentage of overall business); Ex. B, *Desirous Parties Unlimited, Inc. v. Right Connection, Inc.*, No. H-21-0470, 2021 WL 2779313, at *5 (S.D. Tex. July 2, 2021) (Lake, J.) (no general jurisdiction in Texas

based merely on operating website available to Texans because such a standard would create general jurisdiction "in every forum").  Plaintiff fails to meet the high bar necessary to support general jurisdiction over a company in a state other than its place of incorporation, headquarters, or principal place of business.

### B.     Meta Is Not Subject to Specific Jurisdiction in Texas

Nor can Plaintiff allege specific jurisdiction over Meta.  The Fifth Circuit considers two elements, as relevant here, when evaluating specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state and (2) if so, whether the plaintiff's cause of action arises out of or results from those contacts.  *Carmona*, 924 F.3d at 193.  Here, Plaintiff fails to plead the second element because her claims against Meta do not "arise out of or relate to [Meta's] contacts" with Texas—in fact they do not appear to arise out of or relate to Meta at all.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (brackets omitted).

Personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (citation omitted) (brackets in original).  This affiliation must be the defendant's own affiliation—the "unilateral activity of another party or a third person" will not suffice to establish jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 [105 S. Ct. 2174, 2183] (1985) (citation omitted). Thus, without a significant connection between the defendant's activity in the forum and the plaintiff's claims, there is no specific jurisdiction—"regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781.

The Petition fails to allege specific jurisdiction over Meta because it fails to connect Meta's alleged activity in Texas with any of her claims.  Damages are Plaintiff's only requested relief, *see* Pet. p.16 (Prayer), and the Petition contains no specific facts affirmatively connecting the source

6

of Plaintiff's alleged injuries—her own trafficking—to Meta at all, much less to Meta's Texas activity.[1] And it contains no facts linking Meta to Backpage, which operates the backpage.com website that Plaintiff alleges "facilitated" her trafficking, Pet. ¶¶ 86-87, 104, or to her actual trafficker, whom Plaintiff alleges paid for ads to run on Backpage selling her for sex, *id.* ¶ 87.

## II.   Plaintiff Fails to State Any Plausible Claims Against Meta

### A.   Plaintiff Cannot State a Claim Under Chapter 98 of Texas's Civil Practice and Remedies Code

Plaintiff has not stated a Chapter 98 claim against Meta. To do so, a plaintiff must show, in relevant part, that a defendant engaged in an "affirmative act" of participation in a human trafficking venture. *In re Facebook, Inc.*, 625 S.W.3d 80, 96-97 (Tex. 2021). Specifically, a defendant "must have actually committed some 'overt act' that furthers the sex trafficking aspect of the venture." *Id.* at 97 (brackets and ellipsis omitted) (citing *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)).

Nowhere in the Petition does Plaintiff affirmatively allege that Meta engaged in any overt act to facilitate her trafficking. Aside from the Petition's unelaborated, passing reference to Plaintiff's mother reporting unspecified "exploitation through Instagram,"[2] *see* Pet. ¶ 95, and a conclusory assertion that Meta "assisted and facilitated" with Plaintiff's trafficking, *see* Pet. ¶ 70,

---

[1] As noted, Plaintiff alleges, ambiguously, without any elaboration or context, that Meta "turn[ed] a blind eye to human trafficking … as demonstrated by Facebook's callous disregard to Jane Doe['s] mother's reporting of Jane Doe's exploitation through Instagram." Pet. ¶ 95. But Plaintiff does not plead that a specific action or inaction by Meta actually caused her trafficking or exploitation.

[2] To the extent Plaintiff asserts that this vague allegation states a claim that Meta is liable because Plaintiff was exploited via certain content on Meta's Instagram platform—allegations not in fact present in the Petition—such a claim would be barred by section 230 of the Communications Decency Act ("section 230"). *See, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (section 230 bars any claim seeking to hold an interactive computer service liable based on content posted online "by third parties" because section 230 provides "broad immunity" "from such claims").

7

Plaintiff does not plead that there was any actual connection between her trafficking and any of Meta's platforms. The Petition contains no allegations of any act by Meta, much less an overt act, that is causally linked to Plaintiff's alleged injuries, her alleged trafficking, her interactions with her trafficker, or her trafficker's Backpage advertisements. Nor does the Petition allege that Meta was connected in any way to Backpage or to Plaintiff's trafficker. Thus, the Petition comes nowhere close to alleging that Meta's "*own affirmative acts*" facilitated her injury. *See Facebook*, 625 S.W.3d at 97 (emphasis added).

Unable to identify an overt act, the Petition instead alleges that Meta negligently failed to implement mandatory public service announcements and negligently failed to hire human trafficking experts. Pet. ¶ 94. But those purported omissions fall far short of the "overt act" required to state a Chapter 98 claim. And Plaintiff's other conclusory allegations do not allege specific facts showing that she was trafficked on a Meta platform or that any affirmative action by Meta caused her injuries. *See generally Id.* ¶¶ 70, 91-96. The law is clear: These kinds of negligence allegations are insufficient to state a Chapter 98 claim. *Facebook*, 625 S.W.3d at 97.

**B.     Plaintiff Also Has Not Stated a Nuisance Claim Against Meta**

Plaintiff's nuisance claim against Meta likewise fails. Texas Civil Practice and Remedies Code Chapter 125 permits private individuals to seek equitable remedies for both "common" nuisances and "public" nuisances. Plaintiff has not pled facts that would support liability under either of those theories.

Most nuisances are common nuisances; only gang-related activities constitute public nuisances under the statute. *See* Tex. Civ. Prac. & Rem. Code §§ 125.0015, 125.062. And only Texas residents may bring public nuisance claims. *Id.* § 125.064(a). Plaintiff styles her claim as one for "public nuisance," but does not allege any gang-related activity and is not a Texas resident, so her public nuisance claim should be dismissed. *See generally* Pet. ¶¶ 10, 97-99.

But to the extent her claim is construed as one for common nuisance, it too should be dismissed for failure to state a claim.

Chapter 125 provides, as relevant here, two avenues for establishing common nuisance liability, neither of which applies to Meta:  The first, "subsection (c)" liability, requires showing that a defendant operates a web address "in connection with" predicate criminal activity.  Tex. Civ. Prac. & Rem. Code § 125.0015(c).  But a "provider of an interactive computer service as defined by 47 U.S.C. Section 230" is expressly exempt from subsection (c) liability.  *Id.* § 125.0015(d)(2).  The second, "subsection (a)" liability, requires showing that a defendant (1) "maintains a place" (2) "to which persons habitually go" for predicate criminal activity,[3] (3) "knowingly tolerates the activity," and (4) "fails to make reasonable attempts to abate the activity."  *Id.* § 125.0015(a).  As a matter of law, Plaintiff cannot plead either avenue because Meta is exempt from subsection (c) liability as an interactive computer service provider and because, among other reasons, an online platform cannot be a "place" within the meaning of subsection (a).

### 1.    Plaintiff Cannot Plead a Claim for Subsection (c) Common Nuisance Liability

Meta is exempt from statutory common nuisance liability.  As a matter of law, subsection (c) claims cannot be brought against Meta because it is an interactive computer service provider as defined by section 230.[4]  Section 230 defines "interactive computer service" as "any information

---

[3]  Chapter 125 lists various kinds of predicate criminal activity.  *See* Tex. Civ. Prac. & Rem. Code § 125.0015(a).

[4]  Although the Petition recites the statutory elements of a subsection (a) claim, see Pet. ¶¶ 97-99 (alleging the four elements of a subsection (a) claim, but never alleging that Meta operates a web address in connection with predicate criminal activity), it fails to allege any facts in support of those elements.  Plaintiff's common nuisance claim—to the extent her Petition is construed to contain one—must be dismissed because the only subsection that can apply to an online space—subsection (c)—does not apply to Meta.  And as discussed more fully below, *see infra* Pt. II.B.2, subsection (a) applies only to physical places—not websites.

service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."  47 U.S.C. § 230(f)(2).

There is no question that Meta is a section 230 interactive computer service provider.  The cases describing Meta as such are legion.  *See*, *e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1305 (N.D. Cal. 2019) (collecting cases); *accord Facebook*, 625 S.W.3d at 83-84; *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 992 (S.D. Tex. 2017).  Subsection (c)'s exemption for interactive computer service providers is based not on meeting the requirements for section 230 immunity, but only on the definition of "interactive computer service" found in section 230.  Tex. Civ. Prac. & Rem. Code § 125.0015(d)(2).  Meta is therefore exempt from liability by the plain language of subsection (c), and Plaintiff's common nuisance claim fails as a matter of law.[5]

### 2.   Plaintiff Also Cannot Plead a Claim for Subsection (a) Common Nuisance Liability

Plaintiff's subsection (a) claim, to the extent her nuisance claim is so construed, should also be dismissed for failure to state a claim because the existence of subsection (c) establishes that subsection (a)—which applies only to "place[s]"—does not cover websites.  Moreover, Plaintiff has not alleged facts showing the elements of a subsection (a) claim.

### a.   Plaintiff Cannot Show That Meta Maintains a "Place"

Plaintiff appears to allege that Meta is a "place" that creates a nuisance is its online platform Facebook.com, *see* Pet. ¶¶ 1-6, and possibly its online platform Instagram, *see* Pet. ¶ 94.  Because

---

[5] Moreover, damages, the only relief sought in Plaintiff's Petition, *see* Pet. p.16 (Prayer), are unavailable under subsection (c).  Neither damages nor injunctive relief is available under subsection (c), for which the "sole remedy" is "a judicial finding issued to the attorney general."  Tex. Civ. Prac. & Rem. Code § 125.0025(b).

Meta's online platforms are not, as a matter of law, "places" under Chapter 125, Plaintiff fails to state a subsection (a) common nuisance claim.

The statutory context and the plain meaning of "place" establish that the term means only a physical location and does not encompass online spaces.[6] Merriam-Webster Dictionary defines "place" as having a physical nature: a "physical environment," "a way for admission or transit," "physical surroundings," or "a building or locality used for a special purpose." *Place*, *Merriam-Webster Dictionary* (2022).

And, by negative implication, the presence of subsection (c) (applying to online activity) means that the term "place" in subsection (a) cannot include online spaces. Subsection (c) describes *separately* (and provides different remedies for) common nuisances created by "operating a web address or computer network," as opposed to subsection (a)'s common nuisances created by "place[s]." *See* Tex. Civ. Prac. & Rem. Code § 125.0015(c). The statutory scheme creates distinct frameworks for physical places in subsection (a) and online spaces in subsection (c)—including the available remedies—thereby establishing that subsection (a) does not apply to online spaces. *Cf.* Ex. C, *Valdez v. Allstate Tex. Lloyd's*, No. EP-16-CV-346-PRM, 2016 WL 9414143, at *4 (W.D. Tex. Nov. 7, 2016) (interpreting Texas state law and applying rule against surplusage to avoid interpretation that would have rendered entire subsection meaningless).

---

[6] Texas law requires that unambiguous statutes "be construed according to the language as written, using the literal text" and permits courts to consider "external sources of construction only when a statute is ambiguous." *Tenaska Frontier Partners, Ltd. v. Sullivan*, 273 S.W.3d 734, 738 (Tex. App. 2008). When a statutory term is undefined, Texas courts look first to the term's ordinary, dictionary meaning and "then consider the term's usage in other statutes, court decisions, and similar authorities." *Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 702 (Tex. 2020) (citation omitted). Courts will not "confine [their] review to words, phrases or clauses in isolation," but will instead "examine the entire act to glean its meaning," presuming that the statute will "make[ ] sense as a cohesive whole." *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001) (citations omitted).

The statutory context describing the specific mechanisms of and remedies for a subsection (a) claim further bears out this interpretation, as Chapter 125's provisions are nonsensical if "place" can include non-physical locations like online applications or webpages. Chapter 125 speaks of places in terms of physical property, authorizing a petitioner to "file a notice of lis pendens and a certified copy of an order of the court in the office of the county clerk in each county *in which the land is located*." Tex. Civ. Prac. & Rem. Code § 125.002(g) (emphasis added). And when a court enters a temporary or permanent injunction based on subsection (a) liability, the court may order the discontinuance of utility services "to the place at which the nuisance exists," revoke the place's certificate of occupancy, prohibit access to the place via "city streets, alleys, and other public ways," and, under special circumstances, order lease termination. *Id.* § 125.045(b). Further, if the plaintiff asks for a temporary injunction and the court determines this claim is "likely to succeed on the merits," the court shall require a bond of between $5,000 and $10,000 "payable to the state at *the county seat of the county in which the place is located*." *Id.* § 125.045(a-1) (emphasis added). All of these provisions make clear that subsection (a) envisions abating a nuisance at a physical place, not a website.

> **b.    Plaintiff Likewise Has Not Pled Facts Showing the Elements of a Subsection (a) Common Nuisance Claim**

Plaintiff's common nuisance claim fails for the additional reason that she does not even allege facts supporting elements of a subsection (a) common nuisance claim: that persons "habitually go" to Meta's platforms for the purpose of committing predicate criminal activity, that Meta "knowingly" tolerates predicate criminal activity, or that Meta "fails to make reasonable

attempts to abate" predicate criminal activity.[7]  *See* Tex. Civ. Prac. & Rem. Code § 125.0015(a).

Rather, the Petition's allegations serve only to undermine Plaintiff's claim.

Plaintiff fails to plead that any predicate criminal activity occurs—much less habitually

occurs—on Meta's platforms.  *See Habitual,* Black's Law Dictionary (11th ed. 2019) (defining

"habitual" as "customary," "usual," or "recidivist").  The Petition's generalized human trafficking

allegations against Meta do not describe any criminal activity that "habitually" occurred on Meta's

platforms, and certainly not that occurred within Harris County, where Plaintiff has sought to abate

a nuisance.  *See* Tex. Civ. Prac. & Rem. Code § 125.002(b).

Plaintiff has also not alleged facts showing that Meta knowingly tolerates predicate

criminal activity on its platform.  Instead, the Petition alleges that upon discovering instances of

child abuse, sexual assault, and child human trafficking, Meta reports it to the National Center for

Missing and Exploited Children, Pet. ¶¶ 32-34, and cooperates with Texas law enforcement

regarding trafficking, *id.* ¶ 36.

And Plaintiff's own allegations undermine her argument that Meta "fails to make reasonable

attempts to abate" predicate criminal activity because she admits that Meta has engaged in efforts

to prevent predicate criminal activity on its platforms.  Specifically, Meta has reported child sexual

assaults to the National Center for Missing and Exploited Children, monitored and investigated

content involving trafficking of minors in Texas, reported such content to law enforcement

authorities, and blocked Texas-based users for content involving the sexual exploitation of minors.

*See* Pet. ¶¶ 33, 36, 38, 43, 47; *see also Kim v. State*, 451 S.W.3d 557, 562 (Tex. App. 2014)

(rejecting argument that evidence of other, more effective abatement methods made existing

---

[7]   Nor does Plaintiff make any allegations specific to activity on Meta's platforms occurring in
     Harris County.  *See* Tex. Civ. Prac. & Rem. Code § 125.002(a) (requiring that suit be brought
     in the county in which the nuisance is alleged to exist).

methods unreasonable because "reasonable" attempts to abate need not be successful to be nonetheless reasonable).

## CONCLUSION

Meta respectfully requests the Court dismiss the claims against Meta with prejudice.

Dated:  February 22, 2022                    Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Collin J. Cox*

Collin J. Cox
State Bar No. 24031977
Benjamin D. Betner
State Bar No. 24105466
Johanna E. Smith
State Bar No. 24126934
811 Main Street, Ste. 3000
Houston, TX 77002
Phone: (346) 718-6604
Fax: (346) 718-6941
ccox@gibsondunn.com
bbetner@gibsondunn.com
jesmith@gibsondunn.com

Kristin A. Linsley (pro hac vice forthcoming)
Chris Jones (pro hac vice forthcoming)
555 Mission Street
San Francisco, CA  94105-0921
Phone: (415) 393-8395
Fax: (415) 374-8471
klinsley@gibsondunn.com
crjones@gibsondunn.com

Collin D. Ray (pro hac vice forthcoming)
State Bar No. 24093013
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-6912
Phone: (214) 698-3100
Fax: (214) 571-2900
cdray@gibsondunn.com

-AND-

14

**HUNTON ANDREWS KURTH LLP**

Kelly Sandill
State Bar No. 24033094
Katy Boatman
State Bar No. 24062624
Ashley Kahn
State Bar No. 24087824
600 Travis Street, Suite 4200
Houston, TX 77002
Phone: (713) 220-4181
Fax: (713) 220-4285
ksandill@huntonak.com
kboatman@huntonak.com
akahn@huntonak.com

Scott A. Brister
State Bar No. 00000024
500 W. 5th Street, Suite 1350
Austin, TX 78701
Phone: (512) 320-9220
sbrister@huntonak.com

ATTORNEYS FOR DEFENDANT
FACEBOOK, INC. n/k/a META PLATFORMS,
INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2022, I served a copy of the above document on all counsel of record via the Court's CM/ECF system.

/s/ Collin J. Cox
Collin J. Cox