United States District Court
Southern District of Texas

**ENTERED**

May 16, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JANE DOE (K.B.),                    §
                                    §
            Plaintiff,              §
                                    §
v.                                  §    CIVIL ACTION NO. H-22-0226
                                    §
FACEBOOK, INC., n/k/a               §
META PLATFORMS, INC.,               §
                                    §
            Defendant.              §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Doe (K.B.) ("Plaintiff"), brings this action against Defendant Facebook, Inc., n/k/a Meta Platforms, Inc., ("Defendant" or "Facebook"), alleging that Defendant violated the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1591, et seq.[1] Pending before the court is Defendant Meta Platforms, Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California ("Defendant's Motion") (Docket Entry No. 47). After carefully considering the parties' arguments and the applicable law, the court is persuaded that Defendants' Motion should be granted.

`

---

[1]Plaintiff's Second Amended Complaint, Docket Entry No. 13, pp. 20-24 ¶¶ 135-47. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

## I.  <u>Background and Procedural History</u>

**A.    Factual Background[2]**

Defendant owns the social media website Instagram.  In 2017 Plaintiff was a female Instagram user living in Florida.  When Plaintiff created her Instagram account she encountered a notice informing her that account registration constituted agreement to Instagram's Terms of Use.  The notice contained a hyperlink, through which a would-be Instagram user could review the Terms of Use.  The preamble explained that the Terms of Use bound all Instagram users by stating that

> [t]hese Terms of Use are effective on January 19, 2013. . .
>
> By accessing or using the Instagram website, the Instagram service, or any applications (including mobile applications) made available by Instagram (together, the "Service"), however accessed, you agree to be bound by these terms of use ("Terms of Use").  The Service is owned or controlled by Instagram, LLC ("Instagram"). **These terms of Use affect your legal rights and obligations.  If you do not agree to be bound by all of these Terms of Use, do not access or use the Service.**[3]

The Terms of Use contained a forum-selection clause, which stated:

---

[2]Excerpted from "Statement of Relevant Facts" in Plaintiff's Response to Facebook Inc. n/k/a Meta Platforms, Inc.'s Motion to Transfer Venue ("Plaintiff's Response"), Docket Entry No. 51, pp. 5-6; and "Statement of Relevant Facts" in Defendant's Motion, Docket Entry No. 47, pp. 5-7.

[3]Defendant's Motion, Docket Entry No. 47, p. 6 (quoting Declaration of Michael Duffey ("Duffey Declaration") and Exhibit 1 thereto, Docket Entry No. 47-3, p. 2 ¶ 11 and p. 5).

Governing Law & Venue

These Terms of Use are governed by and construed in
accordance with the laws of the State of California
without giving effect to any principles of conflicts of
law AND WILL SPECIFICALLY NOT BE GOVERNED BY THE UNITED
NATIONS CONVENTIONS ON CONTRACTS FOR THE INTERNATIONAL
SALE OF GOODS, IF OTHERWISE APPLICABLE.  For any action
at law or in equity . . . you agree to resolve any
dispute you have with Instagram exclusively in the state
or federal court located in Santa Clara, California, and
to submit to the personal jurisdiction of the courts
located in Santa Clara County for the purpose of
litigating all such disputes.[4]

Instagram's algorithms connected Plaintiff with R.L., a male
sex trafficker with whom Plaintiff had no previous relationship.
Using Instagram R.L. groomed Plaintiff for sex trafficking.  By the
summer of 2017 R.L. was making public posts on Instagram that
obviously advertised Plaintiff for sale for sex.  For the next year
Plaintiff was repeatedly sold for sex through Instagram and was
assaulted by numerous men in Houston, Texas.

R.L. was later convicted for sex trafficking crimes in the
Southern District of Texas, and sentenced to 40 years in prison.
Plaintiff testified against R.L. at his trial.

Plaintiff alleges that despite the open and obvious sex
trafficking content on R.L.'s Instagram page and multiple reports
regarding that content, Defendant failed to take any action against
the page while Plaintiff was being trafficked.  Plaintiff alleges
that Defendant allows sex trafficking to flourish on its platform

---

[4]Id. (quoting Exhibit 1 to Duffey Declaration, Docket Entry
No. 47-3, pp. 10-11).

-3-

as a means to reap benefits by creating connections between users and maximizing advertising revenue.

## B.   Procedural Background[5]

Plaintiff initiated this action on January 14, 2022, by filing an original and amended petition in the 234th Judicial District Court of Harris County, Texas (Civil Action No. 2022-02660).[6]   On January 21, 2022, Defendant removed the action to this court asserting diversity jurisdiction under 28 U.S.C. § 1332(a) (Docket Entry No. 1).   On February 22, 2022, Defendant filed a Motion to Dismiss (Docket Entry No. 12). On March 14, 2022, Plaintiff filed a Second Amended Complaint (Docket Entry No. 13), and on March 16, 2022, the court denied Defendant's Motion to Dismiss as moot (Docket Entry No. 14).   Defendant filed the pending motion to transfer on February 23, 2023, Plaintiff responded on March 22, 2023, and Defendant replied on March 29, 2023.[7]

---

[5]See "Nature and Stage of the Proceeding" in Plaintiff's Response, Docket Entry No. 51, p. 7; and "Nature and Stage of Proceedings" in Defendant's Motion, Docket Entry No. 47, p. 7.

[6]See Plaintiff's Original Petition and Plaintiff's First Amended Petition and Application for Abatement of Public Nuisance, Exhibit 2 to Declaration of Collin J. Cox in Support of Facebook, Inc. N/K/A Meta Platforms, Inc.'s Notice of Removal, Docket Entry No. 1-8, pp. 1-30.

[7]Defendant Meta Platforms, Inc.'s Reply in Support of Its Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Defendant's Reply") (Docket Entry No. 52).

## II.  **Law and Analysis**

Defendant urges the court to grant the pending motion to transfer arguing that (1) by assenting to Instagram's Terms of Use, Plaintiff agreed to a mandatory forum selection clause; (2) the mandatory forum selection clause to which Plaintiff agreed is enforceable; and (3) Plaintiff cannot establish that public interest factors overwhelmingly disfavor transfer to the Northern District of California.[8] Plaintiff responds that her passive agreement to a forum selection clause buried in Instagram's Terms of Use cannot support transfer of her TVPRA claim to Defendant's chosen forum because (1) her TVPRA claim falls outside of the forum selection clause because it is premised on criminal conduct facilitated by Defendant that no Instagram user could reasonably have foreseen would be subject to such a clause; (2) the forum selection clause is unreasonable under the circumstances; and (3) the criminal conduct underlying her TVPRA claim is an extraordinary circumstance that precludes enforcement of the forum selection clause.[9]

### A.  **Applicable Law**

1.  28 U.S.C. § 1404(a)

Motions to transfer venue are governed by 28 U.S.C. § 1404(a),

---

[8]Defendant's Motion, Docket Entry No. 47, pp. 10-17.  See also Defendant's Reply, Docket Entry No. 52, pp. 6-13.

[9]Plaintiff's Response, Docket Entry No. 51, pp. 7-14.

Stewart Organization, Inc. v. Ricoh Corporation, 108 S. Ct. 2239,
2245 (1988), which provides that

> [f]or the convenience of the parties and witnesses, in
> the interest of Justice, a district court may transfer
> any civil action . . . to any district or division  to
> which all parties have consented.

28 U.S.C. § 1404(a).  In the typical case not involving a forum-
selection clause, district courts analyze the propriety of transfer
based on the convenience of the parties (referred to as the
"private interest factors"), and various public-interest
considerations (referred to as the "public interest factors").  See
Atlantic Marine Construction Co., Inc. v. United States District
Court for the Western District of Texas, 134 S. Ct. 568, 581-82
(2013).  "The calculus changes, however, when the parties' contract
contains a valid forum-selection clause, which 'represents the
parties' agreement as to the most proper forum.'"   Id. at
581(quoting Stewart, 108 S. Ct. at 2245).  In such cases courts
afford the forum selection clauses "controlling weight in all but
the most exceptional cases."  Id.

In considering whether to transfer a case under 28 U.S.C.
§ 1404(a) pursuant to a forum selection clause, courts follow a
multi-step process.  See Weber v. PACT XPP Technologies, AG, 811
F.3d 758, 768 (5th Cir. 2016); and PCL Civil Constructors, Inc. v.
Arch Insurance Co., 979 F.3d 1070, 1074 (5th Cir. 2020).  First,
applying principles of contract law as necessary, the court
evaluates whether the forum selection clause is mandatory or

-6-

permissive, is valid, and whether the parties' dispute falls within the scope of the clause. <u>Weber</u>, 811 F.3d at 768, 770-71; <u>PCL</u>, 979 F.3d at 1073-75. <u>Atlantic Marine</u>, 134 S. Ct. at 581 n. 5 (stating that the analysis in that case "presuppose[s] a contractually valid forum-selection clause"). Although federal law governs the enforceability of forum selection clauses, it does not govern their interpretation. <u>See Weber</u>, 811 F.3d at 769; <u>PCL</u>, 979 F.3d at 1075. If the court concludes that the forum selection clause is mandatory, is valid, and that the parties' dispute falls within the scope of the clause, the clause is presumptively enforceable, and to prevent transfer, the resisting party must satisfy a "heavy burden" of showing that enforcement of the clause would be unreasonable under the circumstances. <u>Weber</u>, 811 F.3d at 773-74; <u>PCL</u>, 979 F.3d at 1073-75; <u>Haynsworth v. Corporation</u>, 121 F.3d 956, 963 (5th Cir. 1997), <u>cert. denied</u>, 118 S. Ct. 1513 (1998). If the court concludes that the forum selection clause is enforceable, the court must decide if extraordinary circumstances disfavor transfer. <u>Weber</u>, 811 F.3d at 775-76; <u>PCL</u>, 979 F.3d at 1074. If no extraordinary circumstances disfavor transfer, the court should grant the motion to transfer. <u>Atlantic Marine</u>, 134 S. Ct. at 581 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."). "[T]he plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." <u>Id.</u> at 581.

2.   <u>Choice of Law</u>

Federal law governs the enforceability of forum selection clauses in both diversity and federal question cases, but does not govern interpretation of such clauses.   <u>See Barnett v. DynCorp International, L.L.C.</u>, 831 F.3d 296, 301-02 (5th Cir. 2016) (citing <u>Haynsworth,</u> 121 F.3d at 962,  and <u>Weber,</u> 811 F.3d at 770-71).   In <u>Fintech Fund, F.L.P. v. Horne,</u> 836 F. App'x 215, 223 (5th Cir. 2020), the Fifth Circuit applied state law to interpret a forum selection clause after observing that "[t]he district court applied Texas law, stating that '[t]he parties do not dispute that Texas law governs.' But the parties did not, in fact, acquiesce to the application of Texas law. As such, the district court should have engaged in a choice-of-law analysis."   Although Defendant has observed that Instagram's Terms of Use call for the application of California law,[10] neither party has addressed this issue or acquiesced to the application of Texas law. To interpret the meaning and scope of a forum selection clause, the court must therefore use the forum's choice of law rules to identify the substantive law that governs the clause.   <u>Barnett,</u> 831 F.3d at 301. Because this action was initiated in Texas state court and removed on the basis of diversity jurisdiction, Texas' choice of law rules apply.   <u>Weber,</u> 811 F.3d at 769.

---

[10]Defendant's Motion, Docket Entry No. 47, pp. 8 and 9 n. 1.

The Terms of Use state that they "are governed by and construed in accordance with the laws of the State of California."[11] "Texas courts permit choice-of-law agreements and the default position is that they are enforceable." <u>Cardoni v. Prosperity Bank,</u> 805 F.3d 573, 581 (5th Cir. 2015).  Texas courts

> will enforce a choice-of-law clause unless (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or (2) the chosen law would be "contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of applicable law in the absence of an effective choice of law by the parties."

<u>Western-Southern Life Assurance Co. v. Kaleh,</u> 879 F.3d 653, 658 (5th Cir. 2018) (quoting <u>Exxon Mobil Corp. v. Drennen,</u> 452 S.W.3d 319, 324-25 (Tex. 2014)).  Because Defendant is headquartered in California,[12] the Terms of Use bear a reasonable relation to California.   <u>See Marquis Software Solutions, Inc. v. Robb,</u> No. 3:20-cv-372-B, 2020 WL 955901, at *4 (N.D. Tex. Feb. 27, 2020). <u>See also</u> Tex. Bus. & Comm. Code § 1.301(a) ("Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state . . . the parties may agree that the law either of this state or of such other state

---

[11]<u>Id.</u> at 6 (quoting Duffey Declaration and Exhibit 1 thereto, Docket Entry No. 47-3, p. 2 ¶ 11 and p. 10).

[12]<u>Id.</u> at 16 (asserting that Defendant is headquartered in the Northern District of California).  <u>See also</u> Plaintiff's Second Amended Complaint, Docket Entry No. 13, p. 5 ¶ 14 (alleging that Defendant's headquarters and principal place of business is in California).

. . . shall govern their rights and duties."). Moreover, since neither party has challenged the choice of law provision in the forum selection clause, the Court concludes that the forum selection clause must be interpreted under California law. See Smith v. EMC Corp., 393 F.3d 590, 597 (5th Cir. 2004) ("In Texas, contractual choice-of-law provisions are typically enforced.").

**B.   Application of the Law to the Facts**

   1.   Interpretation of the Forum Selection Clause

   As stated above in § II.A.2, state — not federal — law governs the interpretation of a contract, including whether a forum selection clause is mandatory or permissive, is valid, and whether the dispute at issue falls within the scope of a such a clause. See Weber, 811 F.3d at 769-70 (applying state law to determine whether the clause is mandatory or permissive), and Fintech, 836 F. App'x at 223-26 (applying state law to determine whether the clause is valid and the parties' dispute falls within its scope).

   (a)   The Forum Selection Clause is Mandatory

   The Instagram Terms of Use state that "you agree to resolve any dispute you have with Instagram exclusively in a state or federal court located in Santa Clara, California, and to submit to the personal jurisdiction of the courts located in Santa Clara County for the purpose of litigation all such disputes."[13]

---

[13]Defendant's Motion, Docket Entry No. 47, p. 6 (quoting Duffey
(continued...)

California law considers clauses with "express language of exclusivity of jurisdiction, specifying a mandatory location for litigation" to be mandatory forum selection clauses. See Olinick v. BMG Entertainment, 42 Cal. Rptr. 3d 268, 274 (Ct. App. 2006). Texas law also considers forum selection clauses with express language of exclusivity to be mandatory. See Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 781, 792-93 (Tex. 2005) (holding a contract stating that the parties "agree that if any dispute between us is submitted to a court for resolution, such legal proceeding or suit shall take place in the county in which [Michiana's principal] offices are located," was a mandatory forum selection clause). Because the forum selection clause in the Terms of Use provides for exclusive jurisdiction in Santa Clara County, California, it is a mandatory forum selection clause under both California and Texas law.

(b)   The Forum Selection Clause is Valid

Plaintiff asserts that her "passive agreement to a forum selection clause buried in Instagram's user agreement cannot support the transfer of [her] claim to [Defendant's] chosen

---

[13](...continued)
Declaration and Exhibit 1 thereto, Docket Entry No. 47-3, p. 2 ¶ 11 and pp. 10-11).

-11-

forum,"[14] but does not dispute that by creating and using an
Istagram account she bound herself to Instagram's Terms of Use.
Regardless of whether federal law or the law of California or Texas
applies to the undisputed facts of this case, the forum selection
clause is presumptively valid.  See M/S Bremen v. Zapata Off-Shore
Co., 92 S. Ct. 1907, 1913 (1972) (forum-selection clauses are prima
facie valid and should control questions of venue absent a strong
showing that enforcement would be unreasonable and unjust);
Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp., 132
Cal. Rptr. 3d 551, 556 (Ct. App. 2011) (under California law "the
forum selection clause is presumed valid and will be enforced
unless the plaintiff shows that enforcement of the clause would be
unreasonable under the circumstances"); Rieder v. Woods, 603 S.W.3d
86, 93 (Tex. 2020) (forum selection clauses are presumptively valid
under Texas law).


               (c)   Plaintiff's TVPRA Claim Falls Within the Scope of
                     the Forum Selection Clause

     Quoting Pinto Technology Ventures, LP v. Sheldon, 526 S.W.3d
428, 437 (Tex. 2017), Plaintiff argues that the forum selection
clause does not extend to her TVPRA claim because the scope of the
clause "depends on the parties' intent."  Plaintiff argues that

          [h]ere, it is apparent that [she] did not intend for the
          forum selection clause to encompass her [§] 1595 claim.

_____

          [14]Plaintiff's Response, Docket Entry No. 51, p. 7.

                              -12-

[Plaintiff] used Instagram to engage with social media —
not to become a victim of sex trafficking.  To that end,
[Plaintiff] could not have anticipated that [Defendant]
would facilitate (and benefit from) her sex trafficking
through its Instagram platform.  [Defendant] thus cannot
reasonably contend that [Plaintiff] intended to be forced
to litigate her sex-trafficking claim against [Defendant]
in a forum of [Defendant]'s choosing, merely because she
created an Instagram account. . .

. . . Neither [Plaintiff] (nor [Defendant]) could
have justifiably expected claims relating to
[Defendant's] outrageous conduct of facilitating criminal
sex trafficking to be subject to the forum selection
clause.

[Defendant's] position is particularly egregious
because [Plaintiff's] [§] 1595 claim is premised on
criminal conduct. . . [Defendant] should not be permitted
to transfer [Plaintiff's] claim to California — thus
opting to kick its sex-trafficking conduct from the forum
where [Plaintiff] was trafficked, . . . to a potentially
more favorable forum — based solely on a contractual
forum selection clause.

Claims (like [Plaintiff's]) that turn on criminal
conduct arise independent of the contractual relationship
between Instagram and its users.  And [Plaintiff's] claim
bears no relationship to the lawful and intended use of
Instagram.  Enforcing the forum selection clause here
would be unreasonable, and the extraordinary
circumstances surrounding the criminal nature of
[Plaintiff's] claim make transfer inappropriate.[15]

Defendant replies that Plaintiff's TVPRA claim falls squarely

within the scope of the broad forum selection clause, which is not

limited to certain types of claims.[16]  Relying on Texas law and

asserting that Plaintiff "points to no ambiguity in the contractual

language,"[17] Defendant argues that

---

[15]_Id._ at 8-10.

[16]Defendant's Reply, Docket Entry No. 52, pp. 6-8.

[17]_Id._ at 7.

the only relevant intent-related evidence here is the
intent reflected in the plain language set forth within
the Instagram Terms' four corners. . . But Plaintiff does
not — and cannot — point to any language in the Instagram
Terms that shows the parties intended the forum-selection
claims would not apply to "claim[s] . . . premised on
criminal conduct," . . . or to "claim[s] bear[ing] no
relationship to the lawful and intended use of
Instagram," . . . or to claims "that she [could not]
reasonably anticipate."[18]

As stated above in § II.A.2 the court must use state not
federal law to interpret the forum selection clause. The Instagram
Terms of Use state that "you agree to resolve any dispute you have
with Instagram <u>exclusively</u> in a state or federal court located in
Santa Clara, California, and to submit to the personal jurisdiction
of the courts located in Santa Clara County for the purpose of
litigation all such disputes."[19]   California and Texas law both
consider broadly worded clauses to encompass all tort and contract
claims that may arise under, or from, the contractual relationship.
See <u>Olinick</u>, 42 Cal. Rptr. 3d at 278 (holding that forum selection
clause covering "all disputes arising under this Agreement"
encompasses all causes of action arising from or related to the
agreement regardless of how they are categorized); <u>Pinto</u>, 526
S.W.3d at 439 ("When a forum-selection clause encompasses all
'disputes' . . . its scope is necessarily broader than claims based
solely on rights originating exclusively from the contract.").

_____

[18]<u>Id.</u> at 7-8.

[19]Defendant's Motion, Docket Entry No. 47, p. 6 (quoting Duffey
Declaration and Exhibit 1 thereto, Docket Entry No. 47-3, p. 2 ¶ 11
and pp. 10-11) (emphasis added).

Plaintiff argues that her TVPRA claim "arise[s] independent of the contractual relationship between Instagram and its users,"[20] but that argument is belied by the many factual allegations in her complaint that reference her contract-based relationship with Instagram. For example, Plaintiff alleges that she "was contracted on Instagram,"[21] "R.L. began to send messages to [her] through Instagram's direct message chat feature and posted statements to [her] on her public Instagram screen,"[22] Defendant "knew that [she] was an Instagram user,"[23] and "[Defendant's] Instagram platform formed an integral part of the illegal enterprise through which [she] was trafficked."[24] These allegations show that Plaintiff's TVPRA claim arises from her use of the Instagram account, which formed the basis of both her contract with Defendant and Defendant's allegedly tortious acts. The court concludes therefore that under both California and Texas law Plaintiff's TVPRA claim falls within the broad scope of the forum selection clause, which applies to "any dispute you have with Instagram."[25]

---

[20]Plaintiff's Response, Docket Entry No. 51, p. 10.

[21]Plaintiff's Second Amended Complaint, Docket Entry No. 13, p. 17 ¶ 110.

[22]Id. ¶ 111.

[23]Id. at 19 ¶ 121.

[24]Id. at 20 ¶ 131.

[25]Defendant's Motion, Docket Entry No. 47, p. 6 (quoting Duffey
(continued...)

2.    <u>The Forum Selection Clause is Enforceable</u>

Enforceability of the forum selection clause is governed by federal law.  <u>Weber,</u> 811 F.3d at 769.  The court's conclusion that the forum selection clause is mandatory and valid, and that Plaintiff's TVPRA claim falls within the scope of the forum selection clause, requires the court to find the clause enforceable unless Plaintiff is able to establish that enforcement would be unreasonable under the circumstances.  <u>Haynsworth,</u> 121 F.3d at 963 (citing <u>M/S Bremen,</u> 92 S. Ct. at 1913).  Unreasonableness may exist when

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of [her] day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

<u>Id.</u> (internal quotations and citations omitted).  "The party resisting enforcement on these grounds bears a 'heavy burden of proof.'"  <u>Id.</u> (quoting <u>M/S Bremen,</u> 92 S. Ct. at 1917).

Plaintiff concedes that most of the unreasonableness factors are not at issue here.  She does not argue that the forum selection clause is the result of fraud or overreach, and does not argue that litigating in the Northern District of California would deprive her

---

[25](...continued)
Declaration and Exhibit 1 thereto, Docket Entry No. 47-3, p. 2 ¶ 11 and p. 10).

-16-

of her day in court or be fundamentally unfair.  Instead, Plaintiff

argues that the forum selection clause is unreasonable because it

is "violative of public policy [of the forum state of Texas]."[26]

Plaintiff explains that

> Texas, the forum state, has "a compelling interest in
> stamping out human trafficking." Ex parte Barrett, 608
> S.W.3d 80, 94 (Tex. App. — Dallas 2020, pet. ref'd). And
> forcing [Plaintiff] — a victim of criminal trafficking
> within Texas's borders — to litigate her claim in a
> different state would undermine that compelling interest,
> as well as the state's related compelling interest in
> protecting victims like [her].
>
> Indeed, the Texas legislature has enacted multiple
> statutes to serve these strong interests. See, e.g.,
> Tex. Civ. Prac. & Rem. Code Ann § 98.002(a) (imposing
> civil liability on parties who engage in trafficking or
> "who intentionally or knowingly benefit[] from
> participating" in trafficking ventures); Tex. Penal Code
> Ann. § 20A.02(a) (criminalizing trafficking offenses).
> Leaving no question of Texas's commitment to these
> interests, Texas's civil statutory chapter on human
> trafficking has the express "underlying purpose" of
> protect[ing] persons from human trafficking and
> provid[ing] adequate remedies to victims of human
> trafficking." Tex. Civ. Prac. & Rem. Code Ann. § 98.006.
>
> Beyond that, Texas courts have recognized Texas's
> strong public policy of protecting human-trafficking
> victims. See, e.g., Acain v. Int'l Plant Servs., LLC,
> 449 S.W.3d 655, 664 (Tex. App. — Houston [1st Dist.]
> 2014, pet. denied) (refusing to dismiss human-trafficking
> claims on international comity grounds, in part, based on
> "Texas's interest in preventing human trafficking within
> Texas"). So has Governor Abbott, who declared human
> trafficking to be a public health crisis in Texas. See
> Tex. H.R. Con. Res. 35, 86th Leg. R.S., 2019.
>
> Enforcing the forum selection clause here would
> prevent [Plaintiff] . . . from accessing justice in the
> state where she suffered her abuse.  Such a result
> undermines Texas's compelling interests in protecting

---

[26]Plaintiff's Response, Docket Entry No. 51, p. 11.

trafficking victims and controlling trafficking within its borders.[27]

Asserting that "Instagram's [b]road [f]orum-[s]election [c]lause [i]s [e]nforceable [h]ere,"[28] Defendant replies that

> [Texas]'s public policy favors enforcement of forum-selection clauses unless there is a "statute that <u>requires</u> [this] suit to be brought or maintained in Texas." <u>In re International Profit Associates, Inc.</u>, 274 S.W.3d 672, 680 (Tex. 2009)(per curiam) (emphasis added). No such statute exists here.[29]

In <u>In re International Profit Associates</u> the Texas Supreme Court stated that

> [i]n regard to the public interest and forum-selection clauses, we have held that policy considerations weigh in favor of enforcing valid forum-selection clauses absent a statute that requires suit to be brought or maintained in Texas. <u>See In re AutoNation, Inc.</u>, 228 S.W.3d 663, 669 (Tex. 2007) (citing <u>[In re] AIU [Ins. Co.]</u>, 148 S.W.3d [109,] 114 [(Tex. 2004)]).

274 S.W.3d at 680.   In <u>In re AutoNation</u> the Texas Supreme Court said that "even where Texas statutory provisions specify the application of Texas law, these provisions are irrelevant to the enforceability of a forum-selection clause where no statute 'requires suit to be brought or maintained in Texas.'"   228 S.W.3d at 669 (quoting <u>In re AIU Insurance Co.</u>, 148 S.W.3d at 114).

Although Plaintiff argues that enforcement of the forum selection clause would violate public policy established by a number of Texas statutes, the only claim Plaintiff is pursuing is

---

[27]<u>Id.</u> at 11-12.

[28]Defendant's Reply, Docket Entry No. 52, p. 9.

[29]<u>Id.</u>

-18-

based on a federal — not a Texas — statute, _i.e._, the TVPRA, 18 U.S.C. § 1591, _et seq._   Moreover, Plaintiff has neither cited a Texas statute that precludes enforcement of the forum selection clause or requires that this action to be maintained in Texas, nor cited any case in which a Texas court has held a similar forum selection clause unenforceable as violative of public policy.   To the contrary, other Texas courts have held similar Facebook forum selection clauses enforceable.   _See Moates v. Facebook, Inc.,_ No. 4:20-cv-896-ALM-KPJ, 2021 WL 3013371, at *7 (E.D. Tex. May 14, 2021); and _Moates v. Facebook, Inc.,_ No. 4:21-cv-694-ALM-KPJ, 2022 WL 2707745, at *4 (E.D. Tex. June 13, 2022) (collecting cases). Because the Texas Supreme Court has held that policy considerations weigh in favor of enforcing valid forum-selection clauses absent a statute that requires suit to be maintained in Texas, and because Plaintiff has failed to cite any Texas statute that requires this action be maintained in Texas, the court concludes that the forum selection clause is enforceable.

>   3.   _Plaintiff Fails to Show that Extraordinary Circumstances Disfavor Transfer_

If a forum selection clause is mandatory, valid, and enforceable, the forum selection clause must be given "controlling weight" — meaning the court must grant the motion to transfer venue — unless extraordinary circumstances justify denying the motion. _See Atlantic Marine,_ 134 S. Ct. at 581; _Weber,_ 811 F.3d at 767,

776.  In determining whether a forum selection clause should be given "controlling weight," courts consider the following "public interest factors": (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. <u>Atlantic Marine</u>, 134 S. Ct. at 581 n. 6; <u>Weber</u>, 811 F.3d at 776.  <u>See also In re Volkswagen of America, Inc.</u>, 545 F.3d 304, 315 (5th Cir. 2008)(en banc), <u>cert. denied</u>, 129 S. Ct. 1336 (2009).  The party resisting the forum selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." <u>Atlantic Marine</u>, 134 S. Ct. at 583.

Plaintiff argues that "[t]ransfer is . . . inappropriate here because 'extraordinary circumstances unrelated to the convenience of the parties' — <u>i.e.</u>, the criminal conduct underlying [her] claim — 'clearly disfavor a transfer.'"[30]  Plaintiff argues that

> [i]t would be an extraordinary result to permit [Defendant] to evade the consequences of its benefitting from participating in a venture that engages in criminal conduct in the forum where that conduct occurred, simply because the victim of the criminal conduct signed up for a social media account.
>
> Indeed, although Instagram's forum selection clause may be broad, it cannot be so broad that it encompasses Facebook's facilitating criminal sex trafficking on Instagram's platform. . .

---

[30]Plaintiff's Response, Docket Entry No. 51, p. 12.

Subjecting Instagram's users to a forum selection clause in the latter scenario would be extraordinary because it permits [Defendant] to trap its already victimized users into litigating [Defendant's] sex-trafficking conduct in a forum favorable to [Defendant], despite the users never reasonably anticipating that they would incur — much less need to litigate — such a claim. Permitting [Defendant] to bar that claim in Texas by invoking a contractual forum selection clause would impeded Texas's ability to ensure that victims of human-trafficking receive adequate remedies for wrongs they suffered within the state.

[Defendant] wholly ignores these "extraordinary circumstances" in arguing that transfer is appropriate. Rather than address the criminal conduct underlying [Plaintiff's] claim, [Defendant] argues only that extraordinary circumstances do not exist because the four public-interest factors set forth in <u>In re Volkswagen [],</u> 545 F.3d [at] 315 [], weigh in favor of transferring the case. . . But [Defendant] ignores that these factors "are not necessarily exhaustive or exclusive," <u>Volkswagen,</u> 55 F.3d at 315, and fails to explain how the underlying criminal conduct at issue in this case is not an "extraordinary circumstance[] unrelated to the convenience of the parties." . . .

Regardless, [Defendant] errs in arguing that the public-interest factors set forth in <u>Volkswagen</u> favor transfer. Despite [Defendant's] contentions [to the contrary], this is the "rare[]" case where the factors "defeat a transfer motion" because <u>none</u> of the factors favor transfer.[31]

Citing <u>Atlantic Marine,</u> 134 S. Ct. at 583, Defendant replies that Plaintiff "fails to carry her burden of showing that the 'public-interest factors overwhelmingly disfavor a transfer.'"[32] Defendant argues that "[c]ontrary to Plaintiff's assertions, it is not [Defendant's] burden to show that the public-interest factors

---

[31]<u>Id.</u> at 12-14.

[32]Defendant's Reply, Docket Entry No. 52, p. 10.

favor transfer. . . . Plaintiff must show that the factors overwhelmingly disfavor transfer. . . . This she cannot do."[33]

Because Plaintiff is pursuing only a single claim based on federal law, i.e., the TVPRA, federal law will govern her claim regardless of whether this case remains in Texas or is transferred to California.  Plaintiff does not argue that her case should stay in Texas to avoid administrative difficulties flowing from court congestion or unnecessary problems of conflicts of law.  Nor does Plaintiff argue that a federal court in the Northern District of California would be less familiar with the federal law governing her claim than this court.  Accordingly, the court concludes that these three public interest factors are neutral, and do not disfavor transfer.

Plaintiff's argument that extraordinary circumstances disfavor transfer is focused on the one remaining public interest factor: the local interest in having localized interests decided at home. Asserting that "this suit involves the sex trafficking of a victim in Houston, Texas," Plaintiff argues that "this suit's only 'local' connection to California is that Facebook — who facilitated the trafficking in Texas — is headquartered there."[34]  Plaintiff argues that the California "connection pales in comparison to Texas's, so

---

[33]Id. at 11.

[34]Plaintiff's Response, Docket Entry No. 51, p. 14.

-22-

this factor weighs heavily against transfer."[35] But when, as here, a nonresident plaintiff brings suit against a nonresident defendant, "this factor is entitled to little weight." Mair Holdings, Inc. v. Air Line Pilots Association, International, No. H-06-4108, 2007 WL 9754294, at *5 (S.D. Tex. November 27, 2007), report and recommendation adopted, 2007 WL 9754295 (S.D. Tex. December 19, 2007). See also Perez v. Linkedin Corp., No. 4:20-CV-2188, 2020 WL 5997196, at * 5 (S.D. Tex. October 9, 2020) (finding localized interest factor neutral when defendant was headquartered in California and plaintiff resided in Texas). Plaintiff has not articulated any reason why the court should find that Texas' local interest in adjudicating a non-resident's claim arising from injuries allegedly sustained in Texas is overwhelmingly greater than California's local interest in deciding whether a company headquartered there caused those injuries. Moreover, the Texas Supreme Court has stated that Texas courts will not override a broad forum selection clause solely because the relevant injury allegedly occurred in Texas. See In re AutoNation, 228 S.W.3d at 669. The court therefore concludes that the forum selection clause — which represents the parties' agreement to litigate this dispute in California — must be given controlling weight because Plaintiff has failed to meet her burden of showing that extraordinary circumstances justify denying Defendant's Motion

---

[35]Id.

to transfer.  Accordingly, Defendant's Motion to transfer will be granted.  See Weber, 811 F.3d at 776 (holding the district court properly granted a § 1404(a) motion where the non-movant provided only cursory arguments regarding the public interest factors and, therefore, did not meet his burden of persuasion to avoid enforcement of a forum selection clause).

## III.  **Conclusion and Order**

For the reasons set forth above, Defendant Meta Platforms, Inc.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) (Docket Entry No. 47), is **GRANTED**, and this action is **TRANSFERRED** to the United States District Court for the Northern District of California.

SIGNED at Houston, Texas, this 16th day of May, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-24-